No.  94-500

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

KATHLEEN A. KOVASH,

     Petitioner and Respondent,

  and

MYRON J. KOVASH,

     Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteen Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Mark P. Yeshe, Attorney at Law, Helena, Montana

     For Respondent:

     Derik Pomeroy, Attorney at Law, Bozeman, Montana

FILED

APR 11 1995

Filed: Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  March 9, 1995

Decided: April 11, 1995

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Myron J. Kovash (Myron) appeals from an order of the Eighteenth Judicial District Court, Gallatin County, which assessed Myron an arrearage in his child support obligation and his children's uncovered medical expenses, and modified his prior child support obligation to Kathleen A. Kovash (Kathleen). We affirm in part, reverse in part and remand.

We address the following issues on appeal:

1. Did the District Court err in determining the amount of Myron's arrearage?

2. Did the District Court err by failing to give Myron credit for his payment of the children's health insurance premiums?

3. Did the District Court err by ordering that the assessed arrearage may be collected by the Child Support Enforcement Division (CSED)?

4. Did the District Court err in setting the effective date of Myron's modified child support obligation?

5. Did the District Court err in determining Kathleen's gross income?

Background

Myron and Kathleen were married on October 16, 1976. They had four children during their marriage. The parties' marriage was dissolved on August 31, 1992. Pursuant to the decree of dissolution, Kathleen was granted custody of the four children and Myron was granted limited visitation rights subject to certain

conditions. Myron was ordered to pay a total of $493 per month in child support. The District Court also ordered Myron to maintain health insurance for the children through his employer or, if none was available, to pay Kathleen $80 per month to reimburse her for health insurance premiums. The parties were to equally share uncovered medical costs. Myron appealed from the District Court's findings of facts, conclusions of law and decree. This Court affirmed the District Court in all respects with the exception of a travel restriction placed on Myron. In re Marriage of Kovash (1993), 260 Mont. 44, 858 P.2d 351 (Kovash I).

Subsequently, two of the parties' four children began living with Myron as of September 1, 1993. Myron petitioned the court for a redetermination of child support. On June 24, 1994, the District Court entered its order modifying Myron's child support obligation.

The court found that Myron's new obligation was $322.83 per month and that Kathleen's support obligation was $34.93 per month, leaving Myron with a net support obligation of $287.90 per month. The court ordered that the new child support amount would be effective as of September 29, 1994. The court also found Myron in arrears a total of $7,678 through September of 1993. The court determined the amount of arrearage by finding that through September of 1993, Myron owed $5,576 in back child support, $502 in uncovered medical expenses and $1,600 representing one-half of the cost of braces for one child's teeth. The order was not intended to preclude a finding of further arrears that may have occurred since September of 1993.

Myron filed motions for reconsideration or modification of the court's order. Because the court failed to decide Myron's post-order motions within 45 days, they were deemed denied pursuant to Rule 59(g), M.R.Civ.P. Myron appeals.

Standard of Review

In previous cases, we have stated that we review findings of fact in child support modification cases to determine whether the district court abused its discretion. In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93 (citing In re Marriage of Durbin (1992), 251 Mont. 51, 55, 823 P.2d 243, 245). However, in other areas of marital law, we review a district court's findings of fact to determine whether they are clearly erroneous. See, e.g., In re Marriage of Taylor (1993), 257 Mont. 122, 125-26, 848 P.2d 478, 480 (findings regarding division of marital estate); In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355 (findings regarding maintenance award). There is no reason for this inconsistency. Therefore, from this time on we will review a district court's findings of fact in child support modification cases to determine whether they are clearly erroneous.

We will continue to review a district court's overall decision on modification of child support awards to determine whether the court abused its discretion. In re Marriage of Hill (1994), 265 Mont. 52, 57, 874 P.2d 705, 707. We review a district court's conclusions of law to determine whether the court's interpretation of law was correct. Marriage of Barnard, 870 P.2d at 93.

Issue 1

4

Did the District Court err in determining the amount of Myron's arrearage?

The District Court concluded that Myron was $5,576 in arrears in child support payments for the time up to and including September of 1993. Myron contends, and Kathleen concedes, that this amount is incorrect. The parties stipulated that through August of 1993, Myron was $2,316 in arrears in child support payments. Myron contends that this stipulation was binding and that the court erred by finding a child support arrearage over $2,316.

We disagree with Myron's contention that the court was bound by the stipulation. "Parties cannot make binding agreements, oral or written, as to support, custody or visitation of children." In re Marriage of Mager (1990), 241 Mont. 78, 80-81, 785 P.2d 198, 200. However, the record does not support the court's assessment of $5,576 in child support arrearage through September of 1993. The $2,316 figure appears to be the correct child support arrearage amount from the date the dissolution decree was entered through August of 1993. Even considering a possible pre-decree child support arrearage and those for the month of September 1993, the District Court's amount of $5,576 is inflated. We hold that there is not substantial credible evidence to support the District Court's finding of $5,576 as Myron's amount of child support arrearage through September of 1993. Thus, the District Court's finding was clearly erroneous. We reverse the court's determination and remand for redetermination of the proper amount.

5

Next, the District Court included $1,600, one-half the cost of braces, in the amount of Myron's arrearage. Myron argues that this amount cannot be considered an arrearage as it has not yet been incurred. We agree. Myron is responsible for one-half of the uncovered medical expenses. However, medical expenses must first be incurred before they can be considered in the arrearage. Half of the expense will be Myron's responsibility, and the court may order payment of this amount including one-half of the down payment required to commence the orthodontic work, but it may not be considered an arrearage at this time. Therefore, we reverse the District Court's determination that Myron is $1,600 in arrears for payments on braces for his child.

In determining Kathleen's child support obligation, the District Court also gave Kathleen a credit of $75 per month for payments she would have to make for the braces. Including the amount to be paid for braces in Kathleen's child support calculation distorts the amount of each party's child support obligation. The dissolution decree declared that the parties are to equally share the amount of uncovered medical expenses. On remand, to avoid distortion in the guideline amount of each party's child support obligation, the District Court should exclude any amount for payments on the braces in its guideline calculation.

Finally, the District Court concluded that Myron was $502 in arrears for uncovered medical expenses. Myron argues that Kathleen testified that she had paid a total of $358 in medical expenses and, therefore, he is responsible for only one-half of that amount.

6

We disagree.

Kathleen introduced two exhibits representing amounts still owed for the children's medical needs and amounts that she had paid for the children's outstanding medical expenses. The $358 Kathleen testified to represented only the amount she believed she had already paid toward the uncovered medical expenses. According to the parties' decree of dissolution, Myron is responsible for one-half of the children's uncovered medical expenses, not just those which Kathleen has already paid. Combining the amounts that Kathleen's exhibits show she actually paid and the total amounts still due, it is apparent that the District Court's finding that Myron was $502 in arrears in unpaid medical expenses is not clearly erroneous.

Issue 2

Did the District Court err by failing to give Myron credit for his payment of the children's health insurance premiums?

In redetermining Myron's child support obligation, the District Court did not credit Myron with any amounts he paid for the children's health insurance premiums. Myron testified, without objection or contradiction by Kathleen, that he had obtained health insurance for the children through his employer. The testimony of one witness is generally sufficient for the proof of any fact. See § 26-1-301, MCA. We hold that the District Court erred by failing to include this expense in its redetermination of the parties' child support obligations. The estimated amount Myron expended on the children's insurance coverage was $44 per month. On remand,

7

the District Court should include this figure in its determination of the parties' child support obligations.

Issue 3

Did the District Court err by ordering that the assessed arrearage may be collected by the CSED?

The District Court concluded that the CSED could collect the arrearage, including the $502 Myron was in arrears for uncovered medical expenses and $1,600 for one-half the cost of braces. Myron contends that Montana statutes only provide the authority for the CSED to collect arrears for child support and amounts for health insurance, not uncovered medical expenses or the cost of braces.

We have already determined that the District Court erred in assessing Myron an arrearage for the unincurred costs of the braces. We need only determine whether the Montana legislature has granted the CSED the authority to collect an arrearage of uncovered medical expenses.

Kathleen contends that the definition of "support order" contained in § 40-5-403, MCA, indicates that medical expenses may be collected by the CSED. Section 40-5-403(7), MCA, states:

> "Support order" means an order of the district court of the state of Montana . . that provides a set and determinable amount for temporary or final periodic payments of funds for the support of a child. Support order further includes the following:
>     (a) an order for reimbursement of public assistance money paid by a public agency for the benefit of a minor child;
>     (b) an order for maintenance to be paid to a former spouse when the former spouse is the custodial parent of a child for whom child support is awarded under the same order; and
>     (c) an order requiring payment of interest due on unpaid judgments for child support.

8

In interpreting statutes, we must give language its plain meaning.   Stansbury v. Lin (1993), 257 Mont. 245, 249, 848 P.2d 509, 511.   If the legislature's intent can be determined from the plain meaning of the words used in a statute, we will go no further.   State ex rel. Neuhausen v. Nachtsheim (1992), 253 Mont. 296, 299, 833 P.2d 201, 204 (citation omitted).   It is the function of the courts to ascertain and declare what, in terms or substance, is contained in a statute; it is not our function to insert what has been omitted.   Neuhausen, 833 P.2d at 204 (citation omitted).

The plain statutory language indicates that the legislature intended to grant the CSED the power to collect periodic child support payments.   The statute makes no mention of medical expenses.   We hold that the legislature did not intend to grant the CSED the authority to collect delinquent medical expense payments. It is the legislature's prerogative to give the CSED that power if it so chooses, but that is not the function of this Court. We hold that the District Court misinterpreted the law and erred by ordering that the CSED may collect the amount Myron is in arrears in uncovered medical expenses.

Issue 4

Did the District Court err in setting the effective date of Myron's modified child support obligation?

The District Court ordered that the modified monthly amount of child support due would be effective September 29, 1994.   The parties stipulated, for the purpose of child support determination, that two of the children began living with Myron as of September 1,

9

1993. Myron filed his petition for modification of child support on September 29, 1993. In February of 1994, the parties entered into a stipulation that the modified child support obligation would be retroactive to September of 1993.

Again, stipulations involving child support, custody or visitation are not binding on the court. Marriage of Mager, 785 P.2d at 200. However, we hold that the District Court abused its discretion in determining that the child support modification would not be effective until September 29, 1994. In determining the effective date for the support modification, the court apparently gave no weight to the de facto custody arrangement in effect since September of 1993. Continuing Myron's original child support obligation, which was determined when Kathleen had all four children in her custody, for an entire year after Myron had custody of two of the children does not reflect the realities of the situation.

A court may modify a decree regarding child support only as to installments accruing after the parties have been provided actual notice of the motion for modification. See § 40-4-208(1), MCA. Myron filed for modification of child support on September 29, 1993. Therefore, the effective date of the child support modification should be September 29, 1993.

Issue 5

Did the District Court err in determining Kathleen's gross income?

For the purpose of determining child support, the District

10

Court assigned Kathleen an annual gross income amount of $10,560. Myron contends that this amount is incorrect and that Kathleen should have an imputed annual income of $15,600. He argues that Kathleen was working at a federal job earning approximately $7.50 an hour before leaving that job in June of 1993. Since leaving the job, Kathleen has been indicted, but not convicted, for stealing federal money while employed by the federal government.

Myron contends that the situation in this case is similar to that in Mooney v. Brennan (1993), 257 Mont. 197, 848 P.2d 1020. In Mooney, a majority of this Court held that a father who was being sent to prison did not qualify for a modification of his child support obligation. The majority reasoned that the father's pre-incarceration income should be imputed to him because committing the crime which resulted in his imprisonment was a choice rather than an involuntary change in circumstances. Also, the obligor should not profit by his criminal conduct at the expense of his children. Mooney, 848 P.2d at 1023 (quoting Willis v. Willis (Or.Ct.App. 1991), 820 P.2d 858, 860, rev'd (Or. 1992), 840 P.2d 697).

The instant case is distinguishable from Mooney. Here, Kathleen had custody of all four children at the time she stopped working for the federal government. Since Kathleen had no child support payment obligations at the time she ceased working for the federal government, it cannot be said that she left her federal job to escape her support responsibilities. We hold that it was not clearly erroneous for the District Court to find Kathleen's gross

11

income to be $10,560 for the purpose of child support calculations.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

April 11, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Mark P. Yeshe
Attorney at Law
Ste. 4L, Power Block
P.O. Box 483
Helena, MT 59624

Derik Pomeroy
Attorney at Law
1705 W College, Ste. A
Bozeman, MT 59715

K. Amy Pfeifer
Special Asst. Atty. General
Child Support Enforcement Div.
3075 N. Montana, Ste. 112
Helena, MT 59604

Bruce E. Becker
Attorney at Law
P.O. Box 1113
Livingston, MT 59047

Todd R. Hillier
Attorney at Law
108 Church St.
Bozeman, MT 59715


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_