No. 95-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE MARRIAGE OF

MERLA NORENE SEARS,
f/k/a MERLA NORENE CREWSWELL,

      Petitioner and Respondent,

  and

MARK ALLEN CRESWELL,

      Respondent and Appellant.

**FILED**

DEC 21 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          J. Cort Harrington, Jr., Attorney at Law,
Helena, Montana

      For Respondent:

          Peggy Probasco, Special Assistant Attorney
General, Montana Department of Public Health
and Human Services, Child Support Enforcement
Division, Butte, Montana


Submitted on Briefs: November 9, 1995

Decided: December 21, 1995

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Mark Allen Creswell appeals from a decision and order issued by the First Judicial District Court, Lewis and Clark County, denying his motion for reaffirmation of the decree of dissolution between him and Merla Norene Sears f/k/a Merla Norene Creswell. We affirm.

We address the following issue on appeal:

Is Merla collaterally estopped from attempting to establish Mark's paternity of the minor child, L.R.C.?

## FACTS

Mark and Merla were married on October 10, 1981. Merla filed for a legal separation on March 9, 1982, and the marriage was dissolved on June 9, 1983. One child, L.R.C., had been born as issue of the marriage, although Mark denied paternity in his responsive pleadings. Mark and Merla did not have the finances to obtain blood tests and Merla was planning to marry another man who wished to adopt L.R.C. The parties therefore entered into an oral agreement whereby Mark agreed to sign a consent to adoption and Merla agreed to forego collecting child support from Mark. The

2

District Court determined that it would be in L.R.C.'s best interest to approve the oral agreement. Mark signed the consent to adoption form and the agreement was incorporated into the decree of dissolution.

Merla never married the individual who had agreed to adopt L.R.C. and the adoption never occurred. Apparently, Mark has not exercised any paternity rights to L.R.C. and has paid no child support. In January 1993, the Child Support Enforcement Division of the Montana Department of Public Health and Human Services (CSED) received a referral to assist Merla in establishing and collecting child support from Mark. In February 1994, following an investigation, CSED served Mark with a notice of financial responsibility. On March 28, 1994, Mark filed a motion for reaffirmation of the decree of dissolution in the District Court, claiming the decree relieved him of any support obligation. The administrative proceedings were stayed pending the District Court's ruling on Mark's motion.

CSED moved to be joined as a real party in interest and the motion was not opposed by Mark. Merla did not appear or participate in the district court proceeding. The parties agreed to submit the matter on briefs and on May 10, 1995, the District Court issued a decision and order denying Mark's motion. The District Court held that Mark's consent to adoption was void and since paternity was not adjudicated in the dissolution action, CSED

3

was not collaterally estopped from determining Mark's paternity of L.R.C. From that order, Mark appeals.

DISCUSSION

The District Court's decision and order was in response to a question of law. We review questions of law to determine whether the district court's interpretation was correct. In re Marriage of Kovash (1995), 270 Mont. 517, 521, 893 P.2d 860, 863 (citing In re Marriage of Barnard (1994), 264 Mont. 103, 106, 870 P.2d 91, 93).

Section 40-6-105(1)(a), MCA, states that a man is presumed to be the natural father of a child if he and the "child's natural mother are or have been married to each other and the child is born during the marriage . . . ." Mark and Merla were married on October 10, 1981. L.R.C. was born on April 11, 1982, over a year before the parties were divorced. Mark is therefore presumed by statute to be L.R.C.'s natural father.

Section 40-6-105(3), MCA, states that "[a] presumption under this section may be rebutted in an appropriate action by a preponderance of the evidence." If the presumed father fails to rebut the presumption of paternity, then CSED may issue an order declaring the paternity of the child and establishing the legal existence of the parent and child relationship for all purposes. An order establishing paternity confers or imposes all parental rights, privileges, duties, and obligations. Sections 40-6-105(4) and 40-5-235(1), MCA.

4

Mark argues that CSED is collaterally estopped from attempting to establish his paternity of L.R.C. based on his oral agreement with Merla which was adopted into the 1983 divorce decree. We have articulated the test for collateral estoppel as follows:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? In re Marriage of Holland (1986), 224 Mont. 414, 416, 730 P.2d 410, 412; Aetna Life and Casualty Ins. Co. v. Johnson (1984), 207 Mont. 409, 413, 673 P.2d 1277, 1279.

Mark argues that all three elements of the test are met so as to estop CSED from attempting to establish his paternity of L.R.C. Mark claims that the issues of paternity and child support were raised and resolved on their merits in the 1983 dissolution action. CSED's position is that the issue of paternity was not previously adjudicated and there has been no final judgment on the merits of the paternity question. CSED maintains there is a statutory presumption of paternity pursuant to § 40-6-105, MCA, and that Mark has not rebutted that presumption.

We agree with CSED and conclude that the first and second elements required for collateral estoppel are not satisfied in this case. The parties entered into the agreement in order to expedite their divorce proceedings. Mark denied paternity and Merla thought

5

she was going to marry another individual who would adopt L.R.C. The issue of Mark's paternity of L.R.C. was not an issue adjudicated in the 1983 divorce action and there has been no final judgment on the merits of that issue.

Mark's reliance on Holland is misplaced. In Holland, the husband did not contest paternity and the issue of paternity was adjudicated during the dissolution proceeding. It was only after the husband was in arrears in child support that he requested blood tests to determine paternity. We held that since the issue of paternity had previously been adjudicated, relitigation of the issue was barred by collateral estoppel. Holland, 730 P.2d at 411. In the present case, Mark denied paternity in the dissolution action and a final determination of that issue has not been made. Mark also relies on Butler v. Brownlee (1969), 152 Mont. 453, 451 P.2d 836, and State ex rel. Blakeslee v. Horton (1986), 222 Mont. 351, 722 P.2d 1148. However, in both Butler and Blakeslee the issue of paternity had been adjudicated in the dissolution action.

Mark further maintains that when he signed the consent to adoption on May 10, 1983, L.R.C. ceased to be his child and that any obligation he had to support L.R.C. was at that point extinguished. In 1983, § 40-6-135, MCA (1981), stated:

> (1) Any parent or guardian who proposes to relinquish custody of a child for purposes of placing the child for adoption may do so by executing a relinquishment by which all parental rights to the child are voluntarily relinquished to an agency of the state of Montana or a licensed adoption agency.
> . . . .

(5) Upon the filing of a properly and voluntarily executed relinquishment of a child by a parent or guardian, the court shall immediately issue an order terminating the rights of that parent or guardian to that child.

When Mark signed the consent to adoption he did not relinquish his parental rights to a state agency or licensed adoption agency. Nor did the district court issue an order terminating Mark's parental rights and obligations over L.R.C. Mark's execution of the consent to adoption form in 1983, which he now argues was a relinquishment of his parental rights and responsibilities, did not comply with § 40-6-135, MCA (1981), and was therefore invalid.

We conclude that CSED is not collaterally estopped from attempting to determine Mark's paternity of L.R.C. The issue of paternity has not been previously adjudicated and a final determination on the merits of that issue has not been made. There is a statutory presumption that Mark is L.R.C.'s father. If Mark believes otherwise, he may petition the District Court to determine paternity pursuant to § 40-6-107, MCA. The agreement the parties entered into in 1983 does not rebut the presumption of paternity or legally relieve Mark from his parental rights and obligations. We conclude that the District Court did not err in denying Mark's motion for reaffirmation of the decree of dissolution and affirm the District Court's decision and order on the matter.

_____
Justice

7

We concur:

_____
            Chief Justice

_____

_____

_____
            Justices

8

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that the claim made by the Child Support Enforcement Division against Mark Allen Creswell is not barred by principles of collateral estoppel.

The Division's right to collect anything from Mark is based on § 53-2-613, MCA, and is necessarily derivative from whatever right Merla has to assert a claim. That section provides in relevant part that:

(2) A person by signing an application for public assistance assigns to the state, to the department of public health and human services, and to the county welfare department all rights that the applicant may have to support and medical payments from any other person in the applicant's own behalf or in behalf of any other family member for whom application is made.

(Emphasis added.) Whether or not Mark's paternity was adjudicated in the earlier proceeding, it is at least clear that his right to be free from a support obligation was adjudicated.

In her petition for legal separation, Merla alleged that:

V

. . . Petitioner is now pregnant, the birth of the child to occur in March, 1982.

. . . .

VIII

That Respondent is financially able to contribute to Petitioner the sum of One Hundred Seventy-Five Dollars ($175.00) per month for the support, care, and maintenance of the minor child of the parties . . . .

In answer to the petition for legal separation, Mark sought dissolution of the couple's marriage and denied paternity of any child born during the marriage. He specifically answered that:

9

(4) The Respondent denies the allegations of paragraph V and alleges that there has been one (1) child born to the Petitioner, and by way of further defense the Respondent alleges that he lacks sufficient knowledge as to the truth or falsity of his paternity of said child and therefore denies the same.

On June 9, 1983, the District Court entered its findings of fact, conclusions of law, and decree which dissolved the couple's marriage. In regard to the issues of paternity and child support, the decree provided as follows:

3. By reason of the oral agreement between the parties with respect to custody and child support, the Respondent is relieved of the obligation to make child support payments to Petitioner unless and until he revokes the consent to adoption heretofore executed May 10, 1983, a copy of which consent it attached to this decree. Upon such happening, Petitioner shall be entitled to apply for child support. The Court reserves jurisdiction for that purpose on this subject alone.

It is undisputed that Mark has never revoked his consent to adoption and that Merla has never invoked the District Court's continuing jurisdiction to recover child support on that basis.

Therefore, the issue of Merla's entitlement to child support was previously decided by a final decree or judgment on the merits in a case where a person in privity with the Division was a party to the adjudication. Regardless of the issue of paternity, principles of collateral estoppel bar the Child Support Enforcement Division from recovering child support from Mark more than twelve years after he thought the issue of paternity and child support had been finally resolved. In fact, if there was ever an example of a case where the public policy behind the principles of collateral estoppel and *res judicata* is illustrated, it is this case. No person

10

who thinks an important issue in his or her life has been finally resolved by litigation should have to spend the rest of his or her life concerned that the same issue might have to be relitigated. That is especially true in the area of human relationships which have either been bonded or abandoned based on assumptions that they do or do not exist.

Furthermore, I conclude that principles of *res judicata* bar relitigation of the issue of paternity, whether or not the District Court's decree specifically addressed that issue. The principles of *res judicata* bar not only those issues which were decided by a prior decree or judgment, but those issues which could have been decided but were not because they were either waived or not raised by the party against whom a bar is asserted. *State ex rel. Harlem Irrigation Dist. v. District Court* (Mont. 1995), 894 P.2d 943, 946, 52 St. Rep. 364, 366. In this case, the issue of paternity was squarely before the court based on Merla's allegation and Mark's denial. The fact that Merla chose to resolve the issue by agreement, rather than have it specifically decided by the terms of the court's decree, does not change the fact that the issue cannot be re-raised in subsequent litigation.

I find the majority's disregard for principles of collateral estoppel and *res judicata* particularly curious in light of its sweeping invocation of those same principles based on another consent decree in *Robinson v. First Wyoming Bank* (Mont. Dec. 19, 1995), No. 95-175.

11

For these reasons, I dissent from the majority opinion, I would conclude that any claim by the Child Support Enforcement Division against Mark Allen Creswell, which is first made twelve years after a final decree absolving him of any obligation to pay child support, is barred by principles of collateral estoppel and *res judicata* .

_____
Justice

12

December 21, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


J. Cort Harrington, Jr.
Attorney At Law
7 West 6th Avenue, Suite 4B
Box 514
Helena MT 59624-0514

Peggy Probasco
Special Assistant Attorney General
Department of SRS, Child Support Enforcement Division
17 W. Galena Street
Butte MT 59701

Merla Sears
Box 623
Townsend MT 59644-0623


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy