No. 95-407

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

TANYA TRUAX STOUT,

  Petitioner and Respondent,

 and

DAVID MARK STOUT,

  Respondent and Appellant.

FILED

JUN 18 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
       In and for the County of Missoula,
       The Honorable John Larson, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Judith A. Loring, Stevensville, Montana

  For Respondent:

    John H. Gilliam, Skjelset Law Offices, Missoula,
    Montana

      Submitted on Briefs: February 22, 1996

          Decided: June 18, 1996

Filed:

           Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

Appellant David Mark Stout (Mark) appeals the decision of the Fourth Judicial District Court, Missoula County, which granted an increase in child support to Respondent Tanya Stout (Tanya).

Affirmed in part and reversed in part.

## ISSUES

The following restated issues are raised on appeal:

1. Did the evidence presented demonstrate changed circumstances so substantial and continuing in nature as to make the original child support terms unconscionable?

2. Did the District Court abuse its discretion in its application of the Child Support Guidelines?

3. Did the District Court abuse its discretion by refusing to admit one of Mark's proposed exhibits?

4. Did the District Court abuse its discretion by limiting the time allowed to the parties for presentation of evidence?

## FACTS

Mark and Tanya divorced in 1984. They have two children, a sixteen-year-old boy and a thirteen-year-old girl, who reside primarily with their mother and enjoy liberal visitation with their father. Pursuant to the parties' divorce decree, Mark paid $150

2

per child per month in child support. After the divorce, Mark remarried. His wife, Roxanne, owns and operates an advertising agency which employs Mark. Through her business, Roxanne pays for the children's health insurance, for which Mark is responsible under the divorce decree.

In 1994, Tanya was diagnosed with kidney disease. Her doctor discovered that one of her kidneys was entirely non-functioning and placed her on medication to maintain the function of the other. Since then, Tanya has incurred medical bills of over $2000 each year.

Also in 1994, Tanya moved the District Court for an increase in child support. Mark did not file a brief opposing the motion and, pursuant to Uniform District Court Rule No. 2, the District Court deemed the motion well-taken. It therefore ordered the parties to submit child support worksheets in order to facilitate the determination of an appropriate increase in child support. Both parties submitted worksheets and the District Court referred the matter to a Special Master. The Special Master returned her proposed findings, conclusions, and recommended increase in child support, which the District Court substantively adopted in its order. Mark appeals.

### STANDARD OF REVIEW

We review a district court's findings of fact regarding child support modification to determine whether they are clearly erroneous. In re Marriage of Kovash (1995), 270 Mont. 517, 521, 893 P.2d 860. 862-63. We review a district court's conclusions of

3

law regarding child support modification to determine whether the court's interpretation of the law was correct. <u>Kovash</u>, 893 P.2d at 863 (citing In re Marriage of Barnard (1994), 264 Mont. 103, 870 P.2d 91). In addition, we review a district court's overall decision on child support modification to determine whether the district court abused its discretion. <u>Kovash</u>, 893 P.2d at 863 (citing In re Marriage of Hill (1994), 265 Mont. 52, 874 P.2d 705).

### *DISCUSSION*

1. Did the evidence presented demonstrate changed circumstances so substantial and continuing in nature as to make the original child support terms unconscionable?

When Tanya moved the District Court for an increase in child support, Mark did not file a brief in response to her motion. Uniform District Court Rule No. 2 states that "failure to file an answer brief by the adverse party within ten days shall be deemed an admission that the motion is well-taken." Rule 2(b), Mont. Uniform Dist. Ct. Rules. On this basis, the District Court deemed Tanya's motion well-taken

However, § 40-4-208, MCA, provides in part:

(2)(b) Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:
(i) <u>upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable</u>;
(ii) upon written consent of the parties; [or]
(iii) upon application by the department of public health and human services . .

Section 40-4-208(2)(b), MCA (emphasis added). Here, the parties did not agree to modification, nor has the department of health and

human services been involved. Therefore, only § 40-4-208(2)(b)(i), MCA, applies.

Mark argues that his failure to respond to Tanya's motion does not relieve her of the duty of showing changed circumstances such as the statute requires. He contends that this statutory mandate must be given precedence over the applicable district court rule. Mark further contends that, by ruling that the motion was well-taken, the District Court erroneously relieved Tanya of the duty of showing substantial and continuing changed circumstances sufficient to make the terms of the existing decree unconscionable.

We have held that compliance with § 40-4-208, MCA, is a mandated prerequisite for modification of child support. In re Marriage of Conkey (1995), 270 Mont. ZOO, 203, 890 P.2d 1291, 1293. See also, In re Marriage of Clyatt (1994), 267 Mont. 119, 882 P.2d 503; In re Marriage of Craib (1994), 266 Mont. 483, 880 P.2d 1379; In re Marriage of Kukes (1993), 258 Mont. 324, 852 P.2d 655. Therefore, a district court is powerless to modify a child support obligation unless it does so in compliance with the statute.

The statute does not render the relevant district court rule wholly inapplicable, however. Nor does it mean that the court, faced with an unopposed motion, must hold an evidentiary hearing in order to prove that which is not disputed. A party may comply with the statute through a motion by showing therein with reasonable specificity the changed circumstances which serve to make a decree unconscionable. If such a reasonably specific motion is not opposed, the district court may then deem it well-taken pursuant to

5

the district court rule, because the motion on its face will comply with § 40-4-208(2)(b)(i), MCA.

In this case, however, Tanya's motion stated only that "upon [her] information and belief" circumstances had changed to such an extent that the existing support order was unconscionable. The motion did not state which circumstances had changed, how they had changed, or to what extent. Such a generic statement does not comply with § 40-4-208(2)(b)(i), MCA. Therefore, Mark is correct in asserting that the District Court could not have granted an increase in child support on the basis of the motion alone.

But the District Court did not deem the motion well-taken, assign an increase in support, and send the parties home. Instead, it held a comprehensive evidentiary hearing regarding the proposed increase, during which both Tanya and Mark were permitted to present evidence on the issue of whether an increase in child support was necessary or justified. The proper question, therefore, is whether the evidence presented at the hearing supported a finding of changed circumstances substantial and continual enough to make the existing support decree unconscionable.

On appeal, Mark alleges that Tanya's motion for an increase in child support was based on the increase in the cost of living as well as the increased cost of raising older children. He points out that Tanya presented no evidence which showed either a general cost-of-living increase or the specific costs associated with raising their children. Moreover, he asserts that Tanya's income

6

has increased while his has decreased. Mark therefore alleges that Tanya failed to show changed circumstances substantial and continuous enough to render the existing child support arrangements unconscionable.

It is true that Tanya showed few specific increased expenses or a general increase in the cost of living. But this Court has repeatedly recognized that teenage children generate greater expenditures for the parent than do younger children. In re Marriage of Barber (1992), 252 Mont. 458, 461-62, 830 P.2d 97, 99. See also, In re Marriage of Forsman (1987), 229 Mont. 411, 747 P.2d 861; Johnson v. Johnson (1983), 205 Mont. 259, 667 P.2d 438; Uniform District Court Rule of Child Support Guidelines (1987), 227 Mont. 1, 9. Furthermore, Mark himself acknowledged at the hearing that it undoubtedly costs more to raise children today than it formerly did.

Mark is correct, however, that merely asserting increased costs, without more, will not be sufficient to show changed circumstances. In re Marriage of Gingerich (1994), 269 Mont. 161, 164, 887 P.2d 714, 716 (distinguishing Johnson, 667 P.2d at 438). Such assertions must be supported by evidence of specific cost increases or a demonstrable impact on the parent's financial situation. See, e.g., Johnson, 667 P.2d at 438, and Reynolds, 660 P.2d at 90. If Tanya had based her request solely on the increased cost of raising the children, we would be compelled to reverse the District Court because the evidence presented on this issue was sketchy at best.

Tanya's motion, however, was also based on her own deteriorating health. She testified that she must spend at least $2000 each year on health-related costs. Since she has lost the function in one kidney, Tanya must take medication to maintain the function of the other. The District Court did not abuse its discretion by finding that the evidence of her medical condition, coupled with the admitted increased cost of raising teenage children, was sufficient to constitute changed circumstances so continuing and substantial as to make the existing child support unconscionable.

Nor does the evidence support Mark's contention that, by so finding, the District Court ignored Tanya's admitted increase in wages. When Tanya was divorced, she earned less than $8000 a year. She currently earns slightly more than $16,000 a year, so her income has in fact doubled. But such an increase in earnings does not automatically create a presumption that an increase in child support is not warranted, especially when, as here, the parent initially earned very little. The District Court properly considered Tanya's current income when calculating child support.

Mark also asserts that the District Court erred by determining his income to be higher than the amount which he claims to currently earn. He asserts that the District Court improperly imputed income to him based on its belief that he was purposely under-employed and that his decrease in wages was "made up" to avoid an increase in child support. He claims that his salary had been greatly reduced, and testified that he would only make

8

approximately $10,000 in 1995, the year of the hearing. However, he also testified that he made $5,700 in one two-week period, followed by earnings of only $127 in the two weeks which preceded the hearing.

The District Court's findings and conclusions do not indicate that it imputed income to Mark based on under-employment. Instead, Mark's income was determined by looking at his earning capacity as demonstrated by his salaries for the past four years. It is not error for the District Court to use the figures actually before it when determining modification of child support. Platt v. Platt (1994), 267 Mont. 38, 41, 881 P.2d 634, 636.

Further, the circumstances of the parties must be determined at the time of the modification hearing. They may not be based upon speculative or possible future conditions. In re Marriage of Conklin (1986), 221 Mont. 30, 32, 716 P.2d 629, 631 (quoting Gall v. Gall (1980), 187 Mont. 17, 20, 608 P.2d 496, 498). Mask's earnings before the hearing more than justified a finding that his income should be at least $20,000. If the District Court found Mark's sudden and precipitous drop in salary to be suspicious, this nevertheless was not the basis for determination of his income. The District Court did not abuse its discretion by determining Mark's income based on his past proven earning ability and demonstrated by his salaries for the past four years.

2. Did the District Court abuse its discretion in its application of the Child Support Guidelines?

Mark asserts that the manner in which the District Court applied the Child Support Guidelines in this case was erroneous.

9

Specifically, Mark argues that the District court erred by attributing income to him from his home; by including income Mark earns from his second job as a musician; and by failing to consider medical expenses which Mark currently pays on behalf of himself and the children.

A. <u>Assignment of income to Mark from his home.</u>

In computing Mark's income for purposes of determining child support, the District Court attributed to him the equity income of his home. To do so, the District Court subtracted a "homestead exemption" of $40,000 from the total value of the home ($52,000), leaving Mark with $12,000 in equity in his home. The District Court then calculated the amount of interest which Mark would earn if the $12,000 were invested, and attributed this amount to Mark as income. Mark asserts that the Guidelines do not provide for attribution of income in this fashion. We agree.

The Child Support Guidelines address the attribution of income to non-performing assets in Rule 46.30.1514, ARM. That Rule provides in part:

> Income attributed to assets is the amount of interest income which could be earned if non-performing assets are liquidated and the proceeds invested. For example, a parent may possess non-performing assets like a vacation home, idle land, hobby farm or recreational vehicles. In such cases, a child is entitled to benefit from this potential income.

Rule 46.30.1514(1), ARM.

Essentially, by applying the homestead exemption, the District Court considered $40,000 of the $52,000 value of the home as a performing asset. It then considered the other $12,000 of the

10

home's value as a non-performing asset to which income may be attributed. This treatment was erroneous for three reasons.

First, the homestead statutes, found at § 70-32-101, MCA, et seq., provide that a homestead, valued up to $40,000, generally will be exempt from execution or forced sale. Section 70-32-201, MCA. However, in order to claim the exemption, the owner **must** file a declaration and acknowledgement of homestead in the same way that a grant of real property must be acknowledged and filed. Section **70-32-105,** MCA. In this case, there is no indication that Mark has filed a homestead declaration as is required by statute, or that his home is in danger of being subject to execution or forced sale. Therefore, there is no legal basis for applying the homestead exemption statutes to this child support modification case.

Second, the applicable rule allows for the attribution of income which a parent might earn if "non-performing assets are liquidated and the proceeds invested." Rule 46.30.1514, ARM. By attributing income to part of Mark's house, the District Court seemed to presume that some part of the home could be liquidated and the proceeds invested, while leaving the rest of the home intact. We fail to see how this can be done. Mark's house is valued at $52,000. He cannot simply remove the $12,000 which the District Court has deemed to be non-performing in order to invest it, as if some part of the house's **value is** severable **from** the rest. The house, in its entirety, is a performing asset; it is where he and his wife live and where the children live when they are with him. There is no basis for finding that the **majority** of

the home is a performing asset but that some small part of it is non-performing.

Third, Mark testified that he is not the sole owner of the house in question. Apparently, his wife and his brother also have some interest in the property. This testimony was uncontroverted. Therefore, the District Court erred in attributing income from the entire value of the house without acknowledging that Mark does not in fact own the house in its entirety.

In short, the District Court erred by using the homestead statutes to conclude that any part of Mark's home was a non-performing asset.

B. <u>Inclusion of income earned by a second job.</u>

Mark next argues that the District Court misapplied the guidelines by including income which he earns through his second job as a free-lance musician. He points out that the applicable administrative rule provides that:

> [i]f a person with a subsequent family has income from overtime or a second job, that income is presumed to be for the use of the subsequent family, and is not included in gross income for the purposes of determining support for a prior family. The presumption may be rebutted upon a showing that the additional income is discretionary.

Rule 46.30.1508(2), ARM. On the basis of this rule, Mark argues that the income from his second job should be presumed to be for the benefit of his second family. Therefore, he argues, the District Court erred in including the income from his second job when calculating his child support obligation. The cited administrative rule, however, creates only a presumption which may

12

be overcome by evidence that "the additional income is discretionary."  Rule 46.30.1508(2), ARM.

Mark's wife Roxanne is the owner and operator of her own business.  She is also Mark's employer and pays his salary.  At the hearing, Roxanne testified that her business is very much a going concern; she has moved the business into new offices and hired additional staff to handle its substantial growth.  The testimony of both Mark and Roxanne indicated that Roxanne is more than able to provide for her own needs.  This evidence rebuts the presumption that the income from Mark's second job is necessary for the support of a second family.

Moreover, Mark admitted that he worked a second job as a musician during the time he was married to Tanya.  When he met Roxanne, he also was working as a musician.  The fact that an individual's second job pre-dates the second marriage may rebut the presumption that the second job serves to provide for a second family. See, Craib. 880 P.2d at 1385.

Mark argues that Tanya had the burden of proving that the income from his second job was discretionary.  He argues that the presumption is not adequately rebutted because Tanya herself presented no evidence tending to rebut it.  However, more than sufficient evidence was presented to indicate that the second job is not necessary for the support of Mark and Roxanne.  The fact that this evidence came from them, instead of Tanya, does not diminish its probative value.

13

However, Mark also testified that 50 to 70% of the gross income from his second job as a musician goes to cover expenses related to the pursuit of that job. This testimony was uncontroverted. Therefore, the District Court erred in attributing all of Mark's gross earnings to him as income without taking his expenses into consideration.

Because the presumption regarding income from a second job was adequately rebutted by the evidence presented, the District Court did not err in considering the income Mark receives from his second job when calculating his child support obligation. The District Court erred, however, by not deducting Mark's expenses before attributing to him the income from this second job.

C. Consideration of medical expenses.

Mark complains that the District Court "failed to draw any conclusions" from the fact that Mark is responsible for the children's medical expenses. He argues that the District Court erred because it "did not give [him] credit for payment of those costs in its calculations."

In general, a deduction is allowable for that portion of a parent's insurance costs which benefits the children. Chiovaro v. Tilton-Chiovaro (1991), 247 Mont. 185, 191, 805 P.2d 575, 578. However, only the parent's net cost for the children's insurance may be deducted, Chiovaro, 805 P.2d at 578. If the children's insurance does not cost the parent anything, then he or she is not entitled to a deduction.

14

Mark assigns error to the District Court's failure to allow him a deduction in consideration of "his" payment for health insurance. In fact, however, he doesn't pay for the children's health insurance; Roxanne does, through the policy she maintains for her business. Mark explains that this arrangement is economically advantageous because it would be very difficult for him to obtain insurance for the children independently. We have no quarrel with the arrangements made. Mark is free to fulfill his responsibilities in any way he chooses, so long as he does in fact fulfill them. It is indisputable, however, that Mark incurs no out-of-pocket expense to obtain the children's insurance. Accordingly, the District Court did not err in refusing to grant him a deduction for such expenses.

Mark argues that the District Court erred in its treatment of the parties' medical expenses as well. At the hearing, Tanya testified that her worsening health results in between $2000 and $2500 in medical expenses each year. Mark attempted to introduce an exhibit showing that he expends approximately $900 each year for his own medical expenses, but the District Court refused the exhibit. On appeal, Mark asserts that the District Court erred in considering Tanya's medical needs while refusing to consider his.

This argument is without merit. While the District Court refused Mark's proposed exhibit, it nevertheless allowed a $900 deduction for his medical expenses. This deduction appears in the Child Support Guidelines worksheet prepared and released by the District Court and accompanying its order.

15

3. Did the District Court abuse its discretion by refusing to admit one of Mark's proposed exhibits?

Mark asserts that the District Court erred in not allowing his exhibit regarding his medical expenses. Regardless of whether or not the exhibit was properly refused, the refusal did not prejudice Mark. Apparently, the District Court considered the substance of the exhibit despite having refused it at trial. The proposed exhibit lists various checks written to cover medical expenses and totalling $921. As noted above, the District Court gave Mark a $900 deduction for his medical expenses.

*Since* Mark received the benefit of the District Court's consideration of the information contained in the exhibit, its formal refusal at the hearing did not substantially affect his rights. Had the exhibit been allowed, it would not have changed the financial allocation of support. Therefore, even if the District Court erred in refusing the exhibit, the error was harmless.

4. Did the District Court abuse its discretion by limiting the **time** allowed to the parties for the presentation of evidence?

At the beginning of the hearing, the District Court informed the parties that each would be given 45 minutes to present evidence. Mark now asserts that the time limit prejudiced his ability to present all the evidence he desired.

It is well-settled that this Court will not consider an issue raised for the first time on appeal. Erler v. Erler (1993), 261 Mont. 65, 73, 862 P.2d 12, 18 (citing In re Marriage of Starks (1993), 259 Mont. 138, 855 P.2d 527). *Moreover,* a party who fails

16

to object to an alleged error during a trial or hearing is precluded from raising the issue on appeal. Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 150, 900 P.2d 281, 284.

At the hearing, the District Court clearly notified the parties that each would have 45 minutes in which to present evidence and testimony. Mark's counsel indicated that "probably that [was] fair." At the end of the hearing, the District Court expressly asked Mark's attorney, "Do you desire to submit anything further?" She replied, "I don't. I think I've submitted everything." Mark's attorney did not object to the time limit imposed at the hearing; on the contrary, she indicated such a limit was fine. Because no objection was made, and because this issue was raised for the first time on appeal, we will not consider it.

Finally, Tanya asks this Court to impose costs and sanctions against Mark for bringing a frivolous appeal. We do not agree the appeal was frivolous and decline to impose costs or sanctions.

Affirmed in part and reversed in part.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

17

_____

_____
                Justices

Justice W. William Leaphart, dissenting.

I dissent from the Court's holding in issue one that the District Court correctly held a comprehensive evidentiary hearing despite the inadequacy of Tanya's initial motion to modify child support. As the Court points out, compliance with § 40-4-208, MCA, is a mandated prerequisite for modification of child support. In re Marriage of Conkey (1995), 270 Mont. 200, 203, 890 P.2d 1291, 1293; In re Marriage of Craib (1994), 266 Mont. 483, 491, 880 P.2d 1379, 1384. Despite this mandatory threshold, the Court relieves Tanya of the requirements of § 40-4-208, MCA, by approving of the District Court's sidestep around the deficiencies of Tanya's initial pleadings.

Rule 8(a), M.R.Civ.P., states that a pleading which sets forth a claim for relief shall contain a short and plain statement of the claim showing that the pleader is entitled to relief. To modify a child support obligation, § 40-4-208(2)(b) (i), MCA, requires that the moving party establish changed circumstances so substantial and continuing as to make the terms of the existing child support agreement unconscionable. Marriage of Conkey, 890 P.2d at 1293; Marriase of Craib, 880 P.2d at 1384.

Tanya's motion to modify child support, pursuant to § 40-4-208, MCA, did not establish changed circumstances and did not show that she was entitled to relief. The motion's entire statement in support of changed circumstances consisted of the following remarks:

> [Upon the undersigned's information and belief, circumstances have changed in a substantial and continuing manner, such that the terms of the original Decree are now unconscionable. . . Petitioner respectfully requests the Court entertain her Motion and

19

allow the parties to commence discovery on the issues of unconscionablity [sic] and the prior and current financial status of the parties.

The motion is signed by Tanya's attorney. Not only **is** the **motion** based entirely on the attorney's, rather than Tanya's, information and belief, it is nothing more than a conclusory statement devoid of any factual allegations. The accompanying child support determination worksheet itemizes Tanya and Mark's incomes, assets, and expenses for 1994. The worksheet does not include any information concerning incomes, assets, and expenses from previous years, thus, it does not show any changed circumstances. The motion was inadequate to initiate the proceedings that followed irrespective of the fact that Mark did not respond to the motion. Instead of proceeding with an evidentiary hearing, the court should have summarily denied the motion without prejudice to amend or refile in accordance with § 40-4-208, MCA. I agree with Mark that his failure to respond to Tanya's motion did not relieve her of the initial duty to file pleadings showing changed circumstances as the statute requires. Since I believe that this matter should have been terminated based upon the pleadings, I would not reach issues two through five which arose as a result of the evidentiary hearing. However, if I were to reach those issues, I would concur with the Court's analysis.

_____
Justice

Justice James C. Nelson and Justice Karla M. Gray join in the dissent of Justice Leaphart.

_____
Justice

_____
Justice