No. 01-040

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 189N

IN RE THE MARRIAGE OF

LONA EVERETT,

        Petitioner and Respondent,

   and

ARTHUR EVERETT,

        Respondent and Appellant.

FILED

SEP 19 2001

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
Honorable Katherine R. Curtis, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        Peter F. Carroll, Attorney at Law, Kalispell, Montana

    For Respondent:

        Robert B. Allison, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  May 17, 2001

Decided:  September 19, 2001

Filed:

_____
          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1  Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2  Arthur Everett (Arthur) appeals from the Findings of Fact, Conclusions of Law, and Order Modifying Support entered by the Eleventh Judicial District Court, Flathead County, on the motion to modify child support filed by Lona Everett (Lona), his former spouse. We affirm on the three issues Arthur raises on appeal.

¶3  1. Did the District Court abuse its discretion by including Arthur's overtime pay in determining his child support obligation?

¶4  Arthur has remarried since his marriage to Lona was dissolved and has a minor child within that marriage. He is employed as an agent by the Federal Bureau of Investigation and his earnings include automatic overtime pay in an amount fixed at 25 percent of base wage. The District Court included that automatic overtime pay in Arthur's gross earnings for purposes of calculating his child support obligation to Lona for their two sons who reside with her. Arthur asserts error.

¶5  Arthur correctly contends that under Rule 37.62.106(5), ARM, part of the Montana Uniform Child Support Guidelines pursuant to which child support must be determined, overtime income for a person with a subsequent family is presumed to be for the use of the

subsequent family. From that premise, he asserts that the District Court was required to exclude his fixed and automatic overtime pay, based on his base wage, from his gross earnings in calculating child support in the present case. We disagree.

¶6 The rule at issue does not define "overtime." In interpreting statutes and administrative rules in such a situation, we give words their plain meaning. *See Richter v. Rose*, 1998 MT 165, ¶¶ 21-22, 289 Mont. 379, ¶¶ 21-22, 962 P.2d 583, ¶¶ 21-22. Black's Law Dictionary 1130 (7th ed. 1999) defines overtime as "[t]he hours worked by an employee in excess of a standard day or week" and "[t]he extra wages paid for excess hours worked." Applying these definitions to the record before us regarding Arthur's overtime, it is clear that, while termed "overtime," Arthur's increase in salary in the amount of 25 percent of his base wage is not overtime as that term is commonly used and understood. First, Arthur is a salaried employee, not one paid by the hour. As such, he works the hours required rather than a fixed number of hours per day or week. Consequently, he does not work hours in excess of a standard day or week and is not paid the extra amount for such excess hours worked. On this record, the District Court's implicit determination that no actual overtime-- as contemplated by Rule 37.62.106(5), ARM--is at issue here is not erroneous.

¶7 Moreover, the only reasonable rationale behind the administrative rule's presumption that earnings from traditional overtime are for a subsequent family is that the overtime has been undertaken because necessary or appropriate for the needs of the subsequent family. This rationale also does not "fit" with the kind of overtime at issue here. Arthur's fixed and automatic overtime apparently has been part of his salary, even though as an add-on, for the

3

entire period of his employment as an FBI agent, including the time during which he and Lona were married. Thus, this "overtime" clearly is in the nature of permanent and ongoing salary which meets the "income from salaries" portion of the definition of income available for child support set forth in Rule 37.62.106(2)(a), ARM.

¶8 For these reasons, we conclude the District Court did not abuse its discretion in including Arthur's "overtime" pay in determining his child support obligation.

¶9 2. Did the District Court err in failing to take Arthur's visitation-related expenses into account in calculating his child support obligation?

¶10 At the time of the modification hearing, Arthur lived in Los Angeles, California, and Lona and their sons lived in Flathead County, Montana. The Montana Uniform Child Support Guidelines provide for an adjustment to a parent's income for child support purposes when travel by the parent or the child to attain the goals of a parenting plan exceeds 2,000 miles in a calendar year. See Rule 37.62.130(1), ARM. Arthur contends he is entitled to such a travel adjustment.

¶11 The travel adjustment is calculated using either the parent's annual mileage driven to exercise parenting or the annual cost of transportation by means other than automobile. Rule 37.62.130(3), ARM. Arthur's brief to this Court refers to his amended child support guidelines worksheet submitted to the District Court as support for a travel adjustment to his income.

¶12 Arthur's amended worksheet documents his travel expenses to parent his sons for the year 1999. Arthur did not attend the hearing, and offered no evidence to indicate his 1999

4

travel expenses represented typical annual expenses. The District Court found that Arthur had three visitation periods in 1999 and should be credited $300 toward arrearages in child support for "extraordinary visitation expenses" for that year.

¶13 The District Court also found that as of January of 2000, the parties had agreed--in the court-ordered mediation in which they resolved parenting issues--that Lona would transport the children to Spokane, Washington, to fly to California to visit with Arthur, and would return to Spokane to pick them up at the end of the visits. The court found, based on that agreement and the expense incurred by Lona to meet those obligations, that a travel adjustment to Arthur's child support obligation for visitation expenses beyond the year 1999 was unwarranted.

¶14 Given Arthur's failure to produce documentation to support a travel adjustment beyond the year 1999, along with the evidence of the parties' resolution of transportation issues in mediation, we conclude the District Court did not err in failing to take Arthur's visitation-related expenses into account in calculating his child support obligation.

¶15 3. Did the District Court abuse its discretion in making the modified child support retroactive to April of 1999?

¶16 Arthur states he was not served with notice of the request to modify child support until May 5, 1999. Citing the § 40-4-208(1), MCA, requirement that a court may make modified support effective only after actual notice of the motion to modify, he asserts that retroactivity of his modified child support obligation to April of 1999 is improper. He also appears to argue that the facts of this case do not support a retroactive modification of child support.

5

¶17 Lona's motion for modification included her counsel's affidavit stating a copy thereof was mailed to Arthur in California on March 25, 1999. The motion was filed with the Clerk of the District Court on March 25, 1999. The record suggests that Arthur refused to acknowledge service of the mailed motion and establishes that personal service was obtained by a process server on May 8, 1999, when Arthur was in Montana.

¶18 Notwithstanding the "actual notice" requirement contained in § 40-4-208(1), MCA, we have relied on the filing date of a motion to modify as an appropriate effective date for modified support. *See Marriage of Kovash* (1995), 270 Mont. 517, 525, 893 P.2d 860, 865. On the facts of this case, including the short period of time over which Arthur is quarreling and the fact that he presumably could have delayed actual notice by personal service indefinitely by simply avoiding Montana, we cannot conclude that the District Court abused its discretion in making the modified child support retroactive to April of 1999.

¶19 As to Arthur's second argument, he cites no authority pursuant to which the facts of this case fail to support retroactive modification. As a result, he has failed to comply with the Rule 23(a)(4), M.R.App.P., requirement that arguments on appeal be supported "with citations to the authorities . . . relied on." As a result, we decline to address this argument further.

¶20 Affirmed.

Chief Justice

6

We concur:

_Patricia Cotter_

_[signature]_

_[signature]_

_[signature]_
Justices

7