No. 01-054

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 104

IN RE MARRIAGE OF
CATHY J. ALBINGER

       Petitioner and Respondent,

   and

MICHAEL ALBINGER,

       Respondent and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
                 In and for the County of Cascade,
                 The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Ward E. Taleff, Alexander, Baucus, Taleff & Paul, Great Falls, Montana

      For Respondent:

          Jeffrey S. Ferguson, Hoines & Ferguson, Great Falls, Montana

Submitted on Briefs: August 2, 2001

Decided:  May 16, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     After three years of marriage, during which the Albingers' only child was born, Cathy Albinger (Cathy) filed for and was granted a divorce from Michael Albinger (Michael). Michael was ordered to pay monthly maintenance and child support. Several years later, Cathy requested a modification of the child support arrangement seeking an increase in the amount of monthly child support paid by Michael. After a hearing on the matter, the Montana Eighth Judicial District Court granted Cathy's motion for an increase in child support from $285.00 to $915.00 per month. Michael appeals this order. We affirm.

## ISSUES

1.     Did the District Court err in its calculation of Michael's child support obligation?

2.     Did the District Court err in granting Cathy Albinger a double credit for household expenses when determining the amount of child support?

## FACTUAL BACKGROUND

¶2     This case spans a twelve year time period. Cathy and Michael Albinger were married in September 1987. Their only child, Katie Marie Albinger, was born in March 1990. On August 8, 1990, Cathy Albinger filed a Petition for Dissolution of Marriage. Michael, an employee of Burlington Northern Railroad at the time, failed to respond to the Petition or attend a show cause hearing. Therefore, on October 11, 1990, the District Court entered a default judgment against him. The Decree of Dissolution was entered on October 17, 1990. Under this decree, Cathy was granted sole custody of Katie with Michael receiving reasonable visitation rights. Moreover, in addition to being responsible for much of the marital debt, Michael was required to provide Katie's health insurance, pay all of her medical, dental and hospital expenses, and pay $450.00 per month in child support. Michael was also held responsible for Cathy's legal fees of $750.00.

¶3     At a hearing in March 1991, Michael successfully had the decree set aside as to the custody, child support and property and debt distribution arrangements and the parties orally agreed to certain financial arrangements that are not included in the record. In July 1991, Michael submitted a proposed division of assets to the District Court which included a calculation prepared by a Child Support Enforcement Division (CSED) official, determining that Michael's monthly child support obligation should be $285.00. On January 23, 1992, the District Court entered its Findings of Fact, Conclusions of Law and Decree in which Michael was ordered to pay in addition to other sums, $285.00 per month in child support. Approximately two months after this order was issued, CSED decreased Michael's child support payment to $111.98 per month, followed in September 1992, by another decrease to $68.00 per month. This reduction was purportedly based upon the fact that Michael had experienced a disabling work-related injury in August 1991, and was living exclusively on his disability income at the time.

3

¶4 In March 1993, Cathy filed a motion to modify child support. She stated in her affidavit that she believed Michael had experienced a change in financial circumstances as the result of settling two claims against the railroad filed after his August 1991 injury. The District Court held a hearing on August 4, 1993, and issued its Findings of Fact, Conclusions of Law and Order on September 23, 1993. Michael was ordered to pay $285.00 per month for child support retroactive to March 1992, when CSED first decreased his child support obligation.

¶5 The parties continued to seek modification of support, visitation and custody orders. In February 1995, Cathy once again sought to modify the support agreement, seeking additional child support on the grounds that both parties' financial circumstances had changed. Incredibly, it took over five years for the hearing on Cathy's motion to be held. There were several reasons for this delay, including numerous attorney changes by both parties, illness, and a short-lived rapprochement by the parties between April or May 1998 and late January 1999. It was during this time frame that Michael received his injury settlement, the proceeds of which are purportedly Michael's sole income source for life due to his now permanent disability.

¶6 After receiving his settlement and during the parties' brief period of conciliation, Michael purchased a $48,000 mobile home for Cathy and Katie as well as other goods, including furniture and an automobile, valued at approximately $36,000. He also established a college fund for Katie into which he deposited $13,000 over time, and he paid Cathy $1,285.00 per month, $285.00 of which was his child support payment and $1000.00 which he paid Cathy in exchange for her not working outside of the home but rather staying home with Katie.

¶7 The modification hearing on Cathy's 1995 petition was held on April 26, 2000. The District Court heard testimony from Michael, Cathy, Katie, personal witnesses for Cathy, and a certified

4

public accountant, Nick Bourdeau, retained by Michael to calculate Michael's child support obligations in accordance with the Child Support Guidelines for the State of Montana. Mr. Bourdeau's initial calculation under the guidelines resulted in a monthly child support obligation of $915.00. The parties do not dispute this figure and agree that it was correctly calculated. Mr. Bourdeau had not completed his calculation at this stage, however. He subsequently adjusted it downward by 35%, thereby reaching a monthly child support figure of $595.00. Mr. Bourdeau explained that the guidelines recognize that 35% of a parent's monthly child support is allocated to the cost of housing, and because Michael had purchased a home for Cathy and Katie, this 35% was justifiably deducted from his monthly support obligation under Rule 46.30.1543, ARM, which was in effect at the time Michael bought the home.

¶8    The District Court issued its Findings of Fact, Conclusions of Law and Modification of Decree on November 30, 2000. The court ordered Michael to pay monthly child support of $915.00. Michael promptly filed a request for reconsideration and relief from the judgment, which was denied. He subsequently filed a timely notice of appeal.

### STANDARD OF REVIEW

¶9    We review a district court's findings of fact to determine whether the court's findings are clearly erroneous; we review the district court's conclusions of law to determine whether the conclusions are correct. Additionally, we review a district court's decision regarding modifications to child support to determine whether the district court abused its discretion. *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 862-63 (citing *In re Marriage of Hill* (1994), 265 Mont. 52, 57, 874 P.2d 705, 707.)

### DISCUSSION

¶10     The first issue we address is whether the District Court erred in its calculation of Michael's child support obligation. Michael contends the court erred in disregarding the only testimony offered regarding the effect of Michael's purchase of a home for Cathy. He claims the District Court incorrectly failed to grant him a variance to his child support obligation based upon his having purchased a home for Cathy and Katie.

¶11     When faced with child support issues, district courts are governed by a detailed body of statutory and regulatory law. Section 40-4-204(3)(a), MCA, requires:

> Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of public health and human services pursuant to 40-5-209. . . . The amount determined under the guidelines is presumed to be an adequate and reasonable support award, unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or that it is inappropriate in that particular case.

¶12     Section 40-5-209, MCA, (referenced in § 40-4-204 above) mandates the Department of Public Health and Human Services (DPHHS) to "adopt uniform child support guidelines to be used to determine minimum child support amounts." These guidelines must consider several legislatively-enumerated factors such as the age of the child, the financial resources of the parents and the child, the physical and emotional condition of the child and the child's educational and medical needs. As is clear from the language of § 40-4-204(3)(a), MCA, the district court is mandated by law to apply the DPHHS guidelines to a child support order unless it finds by clear and convincing evidence that application of the guidelines would be unjust or inappropriate.

¶13     The specific guideline at issue in this matter is Rule 46.30.1543(1)(i), ARM, which was in effect between July 1990 and November 1998, when it was repealed. Rule 46.30.1543, ARM,

authorized district courts to grant variances to, or "rebut the guideline amount of" child support. Section (1)(i) contemplated a variance for the right of the "custodial parent and child . . . to occupy the former family home free of costs or at substantially reduced costs." Michael argues that this variance provision is equally applicable if the non-custodial parent purchases another home for the custodial parent and child. In both cases the monthly housing costs are eliminated or substantially reduced. Michael argues that the District Court erred when it disregarded this variance.

¶14 Michael is mistaken in his contention that the district court was "required" to apply this variance. Rule 46.30.1543(1)(i), ARM (repealed 11/1/98), was discretionary. It specifically advised district courts that the listed factors "may be used on a case-by-case basis to rebut the guideline amount of child support." In this case, moreover, the administrative variance and its discretionary character are irrelevant because this Court has a well established rule requiring district courts to determine child support obligations according to guidelines <u>in effect at the time the court makes its decision</u>. *In re Paternity of W.L.* (1993), 259 Mont. 187, 190, 855 P.2d 521, 523, 1993 Mont. LEXIS 196; *In re Marriage of Anderson* (1993), 260 Mont. 246, 256, 859 P.2d 451, 457, 1993 Mont. LEXIS 257. The rules in effect in November 2000, when the court issued its decision, did not include a housing variance. Given that there was no legal basis for deviating from the guidelines, the District Court correctly applied the guidelines in effect at the time the order was issued, and correctly concluded that imposing child support in the undisputed amount derived under the guidelines, was in Katie's best interests. We cannot conclude that clear and convincing evidence existed so as to mandate a different result.

¶15 This conclusion also disposes of Michael's second issue. The District Court properly applied the guidelines in effect at the time the order was entered. Applying those guidelines resulted in a

7

$915.00 per month child support obligation. It is unnecessary and inappropriate to parse that amount to determine percentages applied or credits granted. The amount was derived in accordance with applicable law, and therefore there was no abuse of discretion. We affirm the decision.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
Justice Terry N. Trieweiler dissenting.

¶16    I dissent from the majority's conclusion that the District Court did not abuse its discretion when it modified the parties' decree of dissolution to provide for child support in the amount of $915 per month.

¶17    Section 40-4-204(3)(a), MCA, provides for a variance from the guidelines in effect at the time of the court's decision where clear and convincing evidence establishes that application of the guidelines is unjust to either of the parties. In this case, I conclude that based on the only evidence, application of the guidelines in effect at the time of the District Court's decision was unjust to the Appellant, Michael Albinger.

¶18    In 1998, while Cathy Albinger's motion for modification of child support was pending, Michael purchased a $48,000 home for her and their daughter. At the time, Rule 46.30.1543(1)(i), ARM, authorized variances from child support guidelines where the custodial parent and a child occupy a home free of costs or at substantially reduced costs. Michael had a right to rely on the fact that purchase of the home for his former wife and his daughter would be a factor in determination of his child support obligation. Certainly purchase of the home was in his child's best interest.

8

¶19    Furthermore, the only testimony in this case regarding the appropriate amount of child support was offered by Nicholas Bourdeau, who was called as a witness by Michael. He testified that while child support guidelines, based on the couple's respective incomes, provide for child support in the amount of $915 per month, those guidelines take into consideration the cost of the custodial parent's housing. Since, in this case, housing had been provided by the non-custodial parent, he testified that the necessary adjustment to arrive at a proper child support amount would be 35% of what would otherwise be required. No contrary evidence was offered. Bourdeau's opinion and testimony were undisputed.

¶20    The District Court held that although Michael purchased the home for Cathy, she still had to pay taxes, insurance, utilities, maintenance costs and lot rental to maintain the home and, on that basis, justified denying a variance based on Michael's provision of housing. However, those expenses had already been deducted from Cathy's income in Bourdeau's calculation of child support. Therefore, by taking them into consideration a second time when determining whether a variance should be allowed for the fact that Michael had provided housing, Cathy was given double credit for those expenses.

¶21    Cathy contends, and the District Court agreed, that failure to provide an adjustment to the child support award based on Michael's purchase of housing for Cathy and their daughter is justified by the fact that the Court denied Cathy retroactive child support from the date of her motion, which would have been in the amount of approximately $44,000. However, $44,000 does not begin to approximate the amount spent on Cathy and Michael's daughter during the period in question. In Finding No. 8, the District Court found as follows:

> In May of 1998, Michael Albinger bought a mobile home for Cathy Albinger and Katie Albinger. The mobile home plus the first year's property taxes was approximately $48,000. Michael Albinger also bought gifts for Cathy Albinger and Katie Albinger such as furniture, bedding, clothes, a deck, a computer and other various items totaling approximately $36,000. Michael Albinger gratuitously created

11

a college savings account for Katie Albinger worth approximately $13,000.

¶22 The District Court was justified in denying a retroactive increase in child support simply based on the amount of expenditures made by Michael on behalf of Cathy and Katie over and above the amount he paid to provide them with housing. Therefore, I would conclude that denial of retroactive child support is no justification for ignoring the undisputed evidence regarding the impact of housing on the child support obligation.

¶23 The majority is incorrect when it concludes that there was no legal basis for deviating from the guidelines in effect at the time the District Court's order was issued. The legal basis is found in § 40-4-204(3)(a), MCA. That statute required variance from the guidelines where their application is unjust based on clear and convincing evidence. In this case, application of the guidelines was unjust based on the only evidence.

¶24 Furthermore, the guidelines which were in effect at the time of the District Court's order modifying Michael's child support obligation required that child support ultimately be determined based on the child's best interest. It is hard to argue that it is not in children's best interest to have secure permanent housing. However, if housing is going to be taken into consideration as a necessary expense in arriving at a child support obligation and yet no variance allowed when that housing has already been provided by the non-custodial parent, there is no incentive for the non-custodial parent to provide housing. He or she is only being punished for his or her responsibility by being required to pay twice.

¶25 For these reasons, I dissent from the majority opinion. I would conclude that the District Court abused its discretion by disallowing a variance from the child support guidelines based on Michael's purchase of housing for Cathy and his daughter in 1998.

/S/ TERRY N. TRIEWEILER

12

Justice Jim Rice joins in the foregoing dissent.

/S/ JIM RICE