# IN RE THE MARRIAGE OF
# LORI MARTINICH-BUHL
## Petitioner/Respondent,
## and
# TROY J. BUHL,
## Respondent/Appellant.

No. 01-853.
Submitted on Briefs April 25, 2002.
Decided October 3, 2002.
2002 MT 224.
311 Mont. 375.
56 P.3d 317.

For Appellant: **Daniel R. Sweeney**, Butte.

For Respondent: **Ann Shea** and **Eileen Joyce**, Butte.

JUSTICE COTTER delivered the Opinion of the Court.

¶1 Upon dissolution of their marriage in 1997, Troy Buhl (Troy) and Lori Martinich-Buhl (Lori) agreed to equally share joint custody of their twin boys. Over the next two years, the parties disagreed on various financial issues not addressed in the decree. The final parenting plan entered by the District Court in December, 1999, ordered the parents to continue sharing equal custody of the boys, with

each parent paying for the day care costs during their parenting week, and also ordered Troy to pay $245.00 per month in child support.

¶2 The parties continued to disagree on who was responsible for certain expenses, including day care costs. Various motions relating to calculation of child support were filed, including Lori's motion to clarify day care expense and child support filed May 30, 2001. The District Court entered an order on Lori's motion to clarify on August 6, 2001. The court directed each parent to pay for day care expenses incurred during his or her parenting week, and Troy was ordered to continue paying the $245.00 monthly child support obligation. Troy then filed a motion for child support calculation and a motion to reconsider and modify the court order, arguing he should not have to pay half of the day care expenses, in light of the fact that Lori received credit for all day care expenses in the final parenting plan's calculation of child support. Ultimately, Troy's motions were both denied. Troy appeals the District Court's order denying his motion for child support calculation and motion to reconsider and modify the court's determination of child support obligation. We reverse and remand.

¶3 The dispositive issue presented is whether the District Court abused its discretion when it denied Troy's motion for calculation of child support obligation.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Troy and Lori were married in 1992, and have twin boys, born in 1994. On December 19, 1997, the District Court entered a Decree of Dissolution of Marriage (Decree), dissolving the marriage. The Decree provided that Troy and Lori would continue joint custody of the boys, with parenting time to be equally divided between them. However, disagreements arose between Lori and Troy over various financial matters not addressed in the Decree, including day care and pre-school costs for the boys. Over the next two years, the parties filed several motions in an attempt to clarify child support obligations. The District Court ultimately entered a Final Parenting Plan on December 2, 1999.

¶5 The Final Parenting Plan provided that Troy and Lori would continue to equally share joint custody, alternating on a week to week basis, and noted that it calculated the child support obligation under the Montana Child Support Guidelines (Guidelines). Based on the Child Support Guidelines Worksheet (Worksheet), the court ordered Troy to pay $245.00 per month in child support. According to the Worksheet, Lori was credited with paying all of the annual child care expenses ($5,444). However, in the "Residence" section of the Final

Parenting Plan, the court provided that during each of the party's parenting weeks, he or she "shall be responsible for all of the children's requirements, including school, medical care, illness, travel, daycare, extracurricular activities, etc."

¶6 On December 6, 1999, Lori petitioned the court for a child support variance. Lori argued that since the parties shared custody equally, Troy should also pay for half of the usual expenses of the children. In her petition, Lori argued that Troy's monthly support obligation did not take into account the day care expenses or day-to-day expenses such as clothing, extracurricular activities, school supplies, and gifts. She therefore requested a variance in the amount of $200.00 per month. Troy opposed the petition, arguing that variances are permitted only for extraordinary expenses, and contended that the expenses requested by Lori were included in the child support calculation and were not extraordinary expenses.

¶7 The District Court reviewed the matter with counsel prior to the scheduled hearing, and the parties ultimately entered into an oral stipulation. The District Court entered its order on February 10, 2000, but did not include the substance of the parties' stipulation. While the court did not grant the $200.00 variance, it stated that it was the court's intention that the parties "would share equally in all of the expenses related to the care and support of their children," and ordered that on the first day of the month, the parties must submit and exchange lists of expenditures related to extracurricular expenses, clothing and "other reasonable costs, not to include housing and food." The court also ordered that each parent would "be responsible for all travel, provision of medical care, and other services," during their respective parenting weeks. The court did not specifically address day care expenses in this order, nor did it attach a Worksheet, denoting how day care expenses would be credited.

¶8 On May 30, 2001, Lori filed a Motion to Clarify Day Care Expenses and Child Support, wherein she alleged that she had been solely responsible for paying all the day care costs since the Decree was entered in 1997. Lori requested recalculation of child support obligations and an order directing each parent to pay for their own costs of day care during the weeks he or she has the children. In response, Troy argued that because Lori was given credit for all the day care expenses when the court determined his child support obligation in the Final Parenting Plan, he should not be required to pay any day care costs directly.

¶9 The District Court conducted a hearing on Lori's motion on July

13, 2001, and heard testimony from Troy and Lori. The court entered its order on August 6, 2001, wherein it ordered Troy to continue paying $245.00 per month in child support, and also ordered the parties to pay their own day care costs when the boys were with them. The court concluded that for the year 2001, Lori would claim day care tax deduction for both the boys, but beginning in 2002, each party may claim one child for day care tax deductions.

¶10 On August 7, 2001, Troy filed a Motion for Child Support Calculation, wherein he argued that based on the court's order requiring each parent to pay half the day care costs directly, Lori's credit for day care costs should be removed from the child support calculation, since changing the allocation of day care costs affected the respective child support obligations of both parties. Troy filed a second motion, on August 15, 2001, requesting that the District Court reconsider and modify its August 6, 2001 order. In this motion, Troy contended that requiring him to pay child support in the amount of $245.00 in addition to other expenses ordered by the court, including day care, was contrary to the Guidelines and the Montana Code. Lori, acting *pro se*, opposed both motions, and also filed a motion for contempt, alleging Troy had refused to pay his day care expenses since July 13, 2001.

¶11 The District Court conducted a hearing on Lori's motion for contempt on September 28, 2001, and ultimately ordered Troy to purge himself of contempt within ten days of the hearing. Troy complied with the order by submitting a plan to pay day care costs. On October 3, 2001, the District Court, having reviewed the file and testimony from the July 13, 2001 hearing, denied Troy's Motion for Child Support Calculation. The court determined that Troy failed to present any new evidence or reason that required recalculation of the parties' child support obligations. Also in this order, the court concluded that Troy failed to establish sufficient grounds to prompt the court to take additional testimony, modify, or alter the court's previous order, and accordingly, denied Troy's Motion to Reconsider and Modify Court Order. Troy appeals from this District Court order denying both motions.

## STANDARD OF REVIEW

¶12 ▇▇ In child support modification cases, a district court's findings of fact are reviewed to determine whether the court's findings are clearly erroneous. *In re Marriage of Dishon* (1996), 277 Mont. 501, 504, 922 P.2d 1186, 1188 (citation omitted). We review a district court's

conclusions of law to determine whether the district court's conclusions are correct. *Dishon*, 277 Mont. at 504, 922 P.2d at 1188 (citation omitted). Additionally, we review a district court's decision regarding modifications to child support to determine whether the district court abused its discretion. *In re Marriage of Albinger*, 2002 MT 104, ¶ 9, 309 Mont. 437, ¶ 9, 47 P.3d 820, ¶ 9 (citing *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 863). In evaluating abuse of discretion, we look to whether the court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Groves v. Clark*, 1999 MT 117, ¶ 25, 294 Mont. 417, ¶ 25, 982 P.2d 446, ¶ 25 (citing *In re Marriage of Wessel* (1986), 220 Mont. 326, 333, 715 P.2d 45, 50).

## DISCUSSION

¶13 Did the District Court abuse its discretion when it denied Troy's motion for calculation of child support obligation?

¶14 ▋A presumption exists in favor of the trial court's determination of child support and we will not overturn its findings unless the court abused its discretion. *In re Marriage of Hogstad* (1996), 275 Mont. 489, 500, 914 P.2d 584, 591 (citing *In re Marriage of Brown*, (1994), 263 Mont. 184, 187, 867 P.2d 381, 382). We have consistently stated that "a district court must apply its discretion in a realistic manner, taking into account the actual situation of the parties." *Hogstad*, 275 Mont. at 500, 914 P.2d at 591 (citing *In re Marriage of Noel* (1994), 265 Mont. 249, 252, 875 P.2d 358, 359).

¶15 ▋However, it is well-settled that in awarding or modifying child support, a district court must follow § 40-4-204, MCA, which requires the court to determine child support obligations by applying the standards in that section and the Guidelines, "unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or that it is inappropriate in that particular case." *See* § 40-4-204(3)(a), MCA. *See also*, § 37.62.102(3), ARM (support order may vary from guidelines only if the order "contains a specific written finding"). Moreover, "[i]f the court finds that the guideline amount is unjust or inappropriate in a particular case, it shall state its reasons for that finding," which includes "a statement of the amount of support that would have ordinarily been ordered under the guidelines." Section 40-4-204(3)(b), MCA. *See also*, § 37.62.102(4), ARM ("Findings that rebut and vary from the guidelines must include a statement of the amount of support that would have been ordered under the guidelines without the

variance.").

¶16 **[4]** The purpose of requiring the district court to consider the Guidelines and § 40-4-204, MCA, "is to ensure that there is an evidentiary basis upon which a court's child support determination is based." *In re Marriage of Cowan* (1996), 279 Mont. 491, 498, 928 P.2d 214, 219 (citing *In re Marriage of Kukes* (1993), 258 Mont. 324, 328, 852 P.2d 655, 657). We have held that a district court's failure to provide findings establishing that the court properly considered the required criteria, constitutes an abuse of discretion. *In re Marriage of Griffin* (1993), 260 Mont. 124, 140, 860 P.2d 78, 88. *See also, In re Marriage of Schnell* (1995), 273 Mont. 466, 470, 905 P.2d 144, 146; and *Brandon v. Brandon* (1995), 271 Mont. 149, 154, 894 P.2d 951, 954.

¶17 In the 1999 Final Parenting Plan, the District Court ordered Troy to pay a monthly child support obligation of $245.00, and all of the court's subsequent orders continued this requirement, presumably under the same Worksheet that was attached to the Final Parenting Plan. According to the Worksheet, the parties' respective incomes after deductions were within $1,000.00 of each other (Troy, $19,620; Lori, $18,953); and their gross annual obligations were within $500.00 (Troy, $6,723; Lori, $6,209). Under the portion of the Worksheet where the parents' gross annual obligations are reduced by the amount of child care costs and health insurance coverage that each parent provides for the children, Lori was credited for paying $5444 in child care expenses and $442 for health insurance, thus reducing her annual obligation from $6,209 (gross obligation) to $323 (net obligation). Troy's annual obligation was reduced from $6,723 (gross obligation) to $6,163 (net obligation), since he received credit for paying $560 in health insurance coverage, but no credit for paying costs of child care.

¶18 Although Lori was credited on the Worksheet for paying all the child care costs, both the Final Parenting Plan, and the August 6, 2001 order, provided that Troy and Lori were each responsible for day care costs incurred during their parenting week. This incongruity resulted in a fundamental misunderstanding between the parties: Troy, relying on the credit for child care costs attributed to Lori, felt child care costs were already accounted for in the support obligation, and thus were not his responsibility, while Lori, relying on the District Court's order that each parent was responsible for day care costs when the boys were with him or her, felt Troy was shirking his responsibility. This confusion led to the continued pleadings and requests for clarification and/or modification of the child support obligations.

¶19 When ordering or modifying child support, a district court is

required to follow both the statutory criteria and the Guidelines. Section 40-4-204, MCA. Rule 12 of the Guidelines provides:

(1) The primary child support allowance is supplemented by:

(a) reasonable child care costs incurred by a parent for children of the calculation as a prerequisite to employment. The child care expense is reduced by the federal dependent care tax credit;

(b) costs required for health insurance coverage for the children of the calculation. Include only those amounts which reflect the actual costs of covering the children; and

(c) other needs of the child as determined by the circumstances of the case, including other health related costs.

(2) The total supplemental needs of the child are divided proportionately between the parents according to the parental share determined under ARM 37.62.118.

(3) *Each parent will receive credit for the amount of the supplemental needs paid by that parent.*

Section 37.62.123, ARM (Effective November 1, 1998) (emphasis added). The Guidelines' Worksheet Instructions for determining the credit for payment of expenses under Rule 12 direct the person calculating the child support obligation to "enter the amount of Line 12e expenses [i.e., supplemental needs] that each parent *actually pays*." *See* Montana Child Support Guidelines, Instructions for Line #23 (emphasis added).

¶20 ■ Pursuant to the mandatory language of § 37.62.123(3), ARM, once a court determines that each parent is responsible for any portion of day care expenses, or other "supplementary need," it is required to credit each parent for those costs accordingly. In the case *sub judice*, the District Court failed to follow the mandatory language of § 37.62.123(3), ARM, by not crediting Troy on the Worksheet for the child care expenses he was expected to pay under its order. We conclude the court erred when it found that Troy failed to present a sufficient reason to prompt recalculation of child support obligations and therefore conclude the District Court abused its discretion when it denied Troy's Motion for Calculation.

¶21 We also conclude that our holding in *Hogstad* is distinguishable on the facts from the case presented here. *See, Hogstad*, 275 Mont. at 500, 914 P.2d at 591. In *Hogstad*, the district court ordered the father to maintain health insurance coverage for the parties' son, but did not credit his child support amount to account for the health insurance premiums. Although we held that the district court did not err in declining to credit the father's child support amount because he was

not providing insurance coverage at the time of the hearing, the ruling in *Hogstad* is not a bar to our decision here for two reasons. First, *Hogstad* was decided in 1996, under a different version of the Guidelines than we apply here (§ 37.62.123, ARM, became effective on November 1, 1998). Moreover, the Court's opinion in *Hogstad* does not inform us whether any version of the Guidelines was considered by the Court in its decision, let alone which Guideline was applied.

¶22 Second, the record in *Hogstad* was poorly developed on this issue. While the father apparently complained that his child support should be credited with the amount of the insurance premium he was required to pay, there is no indication that any issue similar to that presented here—a Child Support Worksheet which gave credit to the mother for all day care costs, while ordering the father to pay half those costs—was even presented to or considered by the district court or this Court. Our opinion in *Hogstad* does not address the manner in which the Worksheet was completed nor how much, or if, the mother was credited for providing health insurance. Here, on the other hand, the inconsistencies between the Worksheet and the District Court orders are squarely before us.

¶23 Here, Troy's failure to pay child care costs stemmed directly from the incongruity between the District Court's written order and the actual child support calculation. Moreover, to purge himself of any contempt, Troy filed a plan to pay for day care costs, wherein he demonstrated his intent to pay the child care costs. We therefore conclude that our determination in *Hogstad* is not inconsistent with our conclusion that the District Court abused its discretion by ordering Troy to pay half of the day care costs, while still requiring him to pay child support that was calculated by giving Lori credit for paying all of the day care costs.

¶24 Lori claims the District Court's August 6, 2001 order was effectively a variance. We disagree. As we noted in ¶ 15, if a court finds by clear and convincing evidence that the support awarded under the Guidelines is inappropriate, it must specifically state the reasons for the finding and also include a statement of the amount of support that would have normally been ordered under the Guidelines. *See* § 40-4-204(3), MCA and §§ 37.62.102(3) and (4), ARM. Here, the court's order made no specific findings to that effect. Therefore, we conclude the court's August 6, 2001 order did not "effectively" grant Lori a variance.

¶25 While the confusion concerning child care costs originated with the Final Parenting Plan, the District Court erred in failing to correct the discrepancy when it denied Troy's Motion for Calculation. We

conclude the District Court did not employ conscientious judgment when it refused to rectify the inconsistency between the Worksheet, which granted Lori full credit for day care costs, and its order requiring Troy to pay half of the day care costs. Accordingly, we conclude the District Court abused its discretion, and we reverse its denial of Troy's Motion to Calculate Child Support. We remand this matter to the District Court for further proceedings consistent with this decision.

JUSTICES REGNIER, NELSON and LEAPHART concur.

CHIEF JUSTICE GRAY, specially concurring.

¶26 I agree entirely with the result the Court reaches in this case and join it in remanding to the District Court. However, I would approach the issue more fundamentally.

¶27 In both its August 6, 2001, order granting Lori's motion to clarify child care expenses and child support and its October 3, 2001, order denying Troy's motion for child support calculation and to reconsider, the District Court used the same rationale. It determined the children's best interests required that Troy pay his own day care expenses and his own daily expenses for the children while in his care, in addition to his current child support obligations. The fundamental flaw in the court's rationale is that day care expenses are not a "best interests of the children" issue. Such expenses are a support-related issue controlled by the Guidelines, including the Guidelines' variance requirements. The District Court totally failed to take the Guidelines into account, relying instead on an inapplicable "best interests" test of some unstated kind.

¶28 For these reasons, I would reverse and remand for further proceedings.